IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | | |
|---|---|---|
| DARRELL L. WRIGHT, SR. AS THE ADMINISTRATOR OF THE ESTATE OF LENORA S. WRIGHT, DECEASED, on behalf of itself and all similarly situated persons and entities, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.  10-2304 |
| LINEBARGER GOOGAN BLAIR & SAMPSON, LLP, a Texas limited liability partnership, | ) ) ) ) | |
| Defendant. | ) | |

---

**ORDER ON MOTIONS**

---

Plaintiff   Darrell   L.   Wright,   Sr.   ("Plaintiff"), administrator of the Estate of Lenora S. Wright ("Estate"), in his   representative   capacity   and   on   behalf   of   all   others similarly   situated,   alleges   that   Defendant   Linebarger   Googan Blair  &  Sampson,  LLP  ("Linebarger")  violated  Tennessee  law  by charging   unlawfully   high   attorney's   fees   for   collecting delinquent  property  taxes  owed  to  the  City  of  Memphis  (the "City").  (First Am. Compl. ¶ 9, ECF No. 5.)  Five motions are now before the Court.

On May 14, 2010, Linebarger filed a motion to stay the case pending  the  resolution  of  a  similar  state  court  action.  (See

Mot. to Stay Proceeding Pending Resolution of Parallel State Court Action, ECF No. 8.) Plaintiff responded in opposition on June 2, 2010. (See Pl.'s Resp. in Opp'n to Def.'s Mot. to Stay Proceeding Pending Resolution of Parallel State Court Action, ECF No. 17 ("Pl.'s Resp. to Mot. to Stay").) Linebarger replied on June 4, 2010, and Plaintiff filed a sur-reply on June 11, 2010. (See Def.'s Reply to Pls.' Resp. in Opp'n to Def.'s Mot. to Stay Proceeding Pending Resolution of Parallel State Court Action, ECF No. 19; Pl.'s Surreply in Opp'n to Def.'s Mot. to Stay Proceeding Pending Resolution of Parallel State Court Action, ECF No. 20.)

On May 14, 2010, Linebarger filed a motion to dismiss. (See Mot. to Dismiss, ECF No. 9.) After a Court-approved extension of time, Plaintiff responded on June 24, 2010. (See Pl.'s Unopposed Mot. for Extension of Time and Mem. in Supp., ECF No. 23; Order Granting Pl.'s Unopposed Mot. for Extension of Time, ECF No. 24; Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss, ECF No. 28.) Linebarger filed a supplemental motion to dismiss on July 23, 2010. (See Supplemental Mot. to Dismiss, ECF No. 32.) Although Plaintiff has not responded, that motion is now before the Court.

On May 24, 2010, Linebarger filed a motion to dismiss for lack of standing. (See Mot. to Dismiss for Lack of Standing, ECF No. 15.) On June 30, 2010, Plaintiff responded in

opposition, and Darrell L. Wright, Sr., Brenda J. Wright Youngblood, Robert L. Wright, Jr., Christine L. Wright, Larry D. Wright, and Jacquelyn Wright Johnson (collectively, "Movants") filed a motion for leave to substitute themselves as party plaintiffs. (See Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss for Lack of Standing, ECF No. 29; Mot. for Leave to Substitute as Party Pls., ECF No. 30.) Linebarger responded in opposition to Movants' motion to substitute. (See Def.'s Resp. to Movant's [sic] Mot. for Leave to Substitute as Party Pls. and to Grant Def.'s Renewed Mot. to Dismiss, ECF No. 31.)

For the following reasons, the Court DENIES Linebarger's supplemental motion to dismiss, DENIES Linebarger's motion to stay, GRANTS IN PART and DENIES IN PART Linebarger's motion to dismiss, DENIES Linebarger's motion to dismiss for lack of standing, and GRANTS Movants' motion for leave to substitute as party plaintiffs.

## I.    Background[1]

Linebarger is Texas-based law firm that specializes in collecting unpaid personal and property taxes for governmental entities. (First Am. Compl. ¶¶ 7, 9.) In March 2004, the City contracted with Linebarger to collect delinquent property taxes from individuals and entities whose real property was within the

---

[1] Unless otherwise stated, all facts in this part come from Plaintiff's First Amended Complaint. (See First Am. Compl., ECF No. 5.)

City's jurisdiction for taxation purposes. (Id. ¶¶ 10, 17.) Based on its contract, Linebarger has calculated the back taxes owed by City property owners, informed the property owners of those back taxes, and, in some cases, sued them, earning more than $16.5 million in attorney's fees. (Id.) In collecting taxes, however, Linebarger charged an attorney's fee equal to twenty percent of a person's back taxes, rather than the maximum ten percent permitted by Tennessee law. (Id. ¶ 11.)

In 2009, Plaintiff received a Notice of Lawsuit and Delinquent Real Property Tax Statement (the "Notice") from Linebarger about property located on Sun Valley Drive in Memphis that had been owned by Lenora S. Wright ("Wright") before her death (the "Property"). (Id. ¶ 18.) The Notice stated that Wright had been sued in Chancery Court by the City for $960.33 in back taxes and other charges for the year 2007. (Id. ¶ 19.) Plaintiff paid the $960.33 requested in the Notice to have the Property removed from the Chancery Court suit and avoid any tax lien on the Property. (Id. ¶¶ 20-23.)

Plaintiff alleges that the amount he paid to the City included an unlawful twenty-percent attorney's fee. (Id. ¶ 22) The amount of back taxes on Wright's Property was only $537.87, which would have permitted Linebarger to recover an attorney's fee of approximately $53.98. (Id. ¶ 22.) Before sending the Notice, however, Linebarger had informed the City that the

4

Property was to be assessed a total of $203.96 in "Other Charges," which included a twenty-percent attorney's fee equal to $107.97. (Id. ¶ 22.) The City recorded that amount as owed on the Property. (Id.) According to Plaintiff, after he had paid the City, the City remitted to Linebarger the full twenty-percent attorney's fee. (Id. ¶¶ 23, 25.)

Based on the conduct alleged, Plaintiff filed this action on April 22, 2010.[2] (See Compl., ECF No. 1.) Plaintiff alleges violation of the Tennessee Consumer Protection Act ("TPCA"), Tenn. Code Ann. §§ 47-18-104(a), 47-18-104(b); unjust enrichment; negligence; and conversion; and requests a constructive trust, compensatory damages, and punitive damages as relief. (See id. ¶¶ 34-53, 56-57.) Plaintiff alleges that Linebarger's conduct injured not only the Estate, but thousands of others in Tennessee. (Id. ¶ 26.) Under Federal Rule of Civil Procedure 23, he seeks to certify a class of individuals who, after March 25, 2005, received similar notices from Linebarger that included an unlawful attorney's fee and who paid that fee, "the amount of which was ultimately received by" Linebarger ("Class Members"). (Id. ¶ 28.) According to Plaintiff, joinder is impracticable, common legal and factual issues predominate, his claims are typical of the Class Members'

---

[2] Plaintiff amended his original complaint on May 14, 2010. (See First Am. Compl.) This Order relies on the allegations in the First Amended Complaint and refers to that document as the Complaint.

claims, and he adequately represents those Class Members. (See id. ¶¶ 29-33.)

## II.  Jurisdiction and Choice of Law

Plaintiff asserts that the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), provides this Court with original jurisdiction over his purported class action. (Comp. ¶¶ 2-3.) CAFA provides federal courts with original jurisdiction over certain class actions. See 28 U.S.C. § 1332(d)(2). Under CAFA, a "class action" is any civil action filed under Rule 23 of the Federal Rules of Civil Procedure. See id. § 1332(1)(B). Plaintiff alleges claims on behalf of various Class Members and specifically invokes Rule 23. (See First Am. Compl. ¶ 28.) Therefore, this Court has original jurisdiction over his class action under 28 U.S.C. § 1332(d)(2) if the other requirements of that provision are satisfied.

CAFA alters the jurisdictional rules for actions that, if brought in federal court individually, would otherwise be based on the general grant of diversity jurisdiction provided by 28 U.S.C. § 1332. See 28 U.S.C. § 1332(d); Freeman v. Blue Ridge Paper Prods., Inc., 551 F.3d 405, 407-08 (6th Cir. 2008) (explaining that CAFA was adopted to ensure that federal court jurisdiction could not be avoided by artful pleading or other strategic gamesmanship) (citations omitted). Although an unincorporated entity is generally a citizen of every state

where its members are citizens, for purposes of a class action, an unincorporated entity is a citizen of the state of its principal place of business and under whose laws it is organized. See 28 U.S.C. § 1332(d)(10); Ferrell v. Express Check Advance of SC LLC, 591 F.3d 698, 705 (4th Cir. 2010) (concluding "that the term 'unincorporated association' in § 1332(d)(10) refers to all non-corporate business entities"); cf. Abrego v. Dow Chemical Co., 443 F.3d 676, 684 (9th Cir. 2006) (explaining that CAFA's minimal diversity requirement broadened federal court jurisdiction of class actions) (citations omitted). Because Linebarger is an unincorporated limited liability partnership organized under Texas law, with its principal place of business in Austin, Texas, it is a citizen of Texas. See 28 U.S.C. § 1332(d); (First Am. Compl. ¶ 2).

CAFA does not alter the general rule that a legal representative of a decedent's estate is a citizen of the same state as the decedent. See 28 U.S.C. § 1332(c)(2). Because Wright was a Tennessee citizen at the time of her death, Plaintiff is a Tennessee citizen for purposes of this action. See id.; (First Am. Compl. ¶ 2). Because Plaintiff and Linebarger are citizens of different states, CAFA's minimal diversity requirement is satisfied. See 28 U.S.C. § 1332(d)(2)(A).

CAFA provides federal jurisdiction in class actions where "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." See 28 U.S.C. § 1332(d)(2); Everett v. Verizon Wireless, Inc., 460 F.3d 818, 822 (6th Cir. 2006) (citations omitted). Plaintiff alleges that "the aggregate amount of the Class Members' claims substantially exceeds $5,000,000." (First Am. Compl. ¶ 3.) Linebarger argues that Plaintiff has failed to meet CAFA's amount in controversy requirement for two reasons.

In its supplemental motion to dismiss, Linebarger argues that this Court lacks jurisdiction because Plaintiff has not alleged that any individual Class Member has suffered an injury of more than $75,000. (See Supplemental Mot. to Dismiss; Mem. of Law in Supp. of Supplemental Mot. to Dismiss 2, ECF No. 32-1 ("Supplemental Mem.") Linebarger relies on a decision by the Court of Appeals for the Eleventh Circuit holding that, "in a CAFA action originally filed in federal court, at least one of the plaintiffs must allege an amount in controversy that satisfies the current congressional requirement for diversity jurisdiction provided in 28 U.S.C. § 1332(a)." See Cappuccitti v. DirecTV, Inc., 611 F.3d 1252, 1256 (11th Cir. 2010); (Supplemental Mem. 8-11). After Linebarger had filed its motion, however, the Eleventh Circuit vacated that decision and concluded that "CAFA's text does not require at least one

8

plaintiff in a class action to meet the amount in controversy requirement of 28 U.S.C. § 1332(a)." Cappuccitti v. DirecTV, Inc., 623 F.3d 1118, 1120 (11th Cir. 2010) ("Subsequent reflection has led us to conclude that our interpretation was incorrect.") For class actions originally filed in federal courts, CAFA's text does not support requiring at least one plaintiff to meet both the $75,000 amount in controversy requirement of 28 U.S.C. § 1332(a) and CAFA's $5,000,000 requirement. See 28 U.S.C. § 1332(d)(2). Linebarger's argument is not well-taken. The supplemental motion to dismiss is DENIED.

Linebarger alternatively argues that Plaintiff's asserted amount in controversy depends on the unsupported legal conclusion that the attorney's fees it collected violated Tennessee law. (See Mem. of Law in Supp. of Mot. to Dismiss 17-18, ECF No. 9-1.) ("Def.'s Mem. in Supp. of Mot. to Dismiss") For that reason, Linebarger argues that the asserted amount is not plausible under the motion to dismiss standard stated in Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). (See Def.'s Mem. in Supp. of Mot. to Dismiss 17-18.)

The plausibility standard does not apply to a plaintiff's allegations about the amount in controversy. See Schultz v. General R.V. Ctr., 512 F.3d 754, 756 (6th Cir. 2008) (citation

omitted).   "It is well-settled that 'if a plaintiff brings an action in federal court and a defendant seeks dismissal on amount-in-controversy grounds, the case will not be dismissed unless it appears that the plaintiff's assertion of the amount in controversy was made in bad faith.'"   Id. (quoting Gafford v. Gen. Elec. Co., 997 F.2d 150, 157 (6th Cir. 1993)).   Bad faith is established only if it appears "to a legal certainty" that the claim is for less than the jurisdictional amount.   See id.; Freeman, 551 F.3d at 409 (applying legal certainty test to the $5 million amount in controversy requirement under CAFA).

It does not appear to a legal certainty that the Class Members cannot recover the asserted amount in controversy. Plaintiff alleges that Linebarger earned $16.5 million in attorney's fees for collecting back taxes for the City and, in doing so, required Class Members to pay attorney's fees twice the legal limit.   (See First Am. Compl. ¶¶ 11, 25.)   Assuming those allegations to be true, they suggest that Linebarger's total unlawful gain could be $8.25 million.   Therefore, Plaintiff's assertion that Class Members' aggregated claims amount to more than $5,000,000 has not been made in bad faith, and the amount in controversy requirement is satisfied.   See Schultz, 28 U.S.C. § 1332(d)(2); 512 F.3d at 756.   Because Plaintiff has satisfied the requirements of 28 U.S.C. § 1332(d)(2)(A), this Court has original jurisdiction.

In a diversity action, state substantive law governs. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). A federal district court is required to apply the choice of law rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). "Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side." Id. Where the underlying basis for CAFA jurisdiction is diversity, the forum state's choice of law rules apply. See Savedoff v. Access Group, Inc., 524 F.3d 754, 760 n.5, 762 (6th Cir. 2008) (applying forum state's choice of law provisions where federal jurisdiction was premised on 28 U.S.C. § 1332(d)(2)(A)). Therefore, Tennessee choice of law rules apply.

Plaintiff alleges violation of the TCPA, unjust enrichment, negligence, and conversion. (See First Am. Compl. ¶¶ 34-53, 56-57.) His claims sound in tort. For tort claims, Tennessee follows the "most significant relationship" rule, which provides that "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992). The alleged injuries in this case, the payment of illegal attorney's fees to Linebarger for collecting back property taxes owed to the City, occurred in Tennessee. Plaintiff and Linebarger assume that Tennessee substantive law

applies.     Neither   alleges   that   another   state   has   a   more
significant  relationship  to  the  litigation.    Therefore,  the
Court will apply Tennessee substantive law.

### III. Motion to Stay

Linebarger  has  filed  a  motion  urging  this  Court  to  stay
this  action  pending  the  resolution  of  a  state  court  action.
(See  Mot.  to  Stay;  Mem.  of  Law  in  Supp.  of  Mot.  to  Stay
Proceeding  Pending  Resolution  of  Parallel  State  Court  Action,
ECF  No.  8-1  ("Mem.  in  Supp.  of  Stay").)    When  Linebarger's
motion  was  filed,  Holland v. City of Memphis  (the  "State  Court
Action"),  was  pending  before  the  Chancery  Court  of  Shelby
County,  Tennessee.    (See  Mot.  to  Stay  1.)    Linebarger  argues
that  the  doctrine  of  Colorado  River  Water  Conservation  District
v. United States,  424  U.S.  800  (1976)  favors  abstention,  pending
resolution  of  the  State  Court  Action.    (See  Mem.  in  Supp.  of
Stay  2-3.)    Plaintiff  argues  that  the  State  Court  Action  is  no
bar  to  proceeding  with  the  action  now  before  the  Court.    (See
Pl.'s Resp. to Mot. to Stay.)

### A. Standard of Review

A  pending  state  court  action  is  generally  no  bar  to  federal
proceedings.    See  Colo.  River,  424  U.S.  at  817  (citations
omitted).    In  "exceptional"  circumstances,  however,  the  Colorado
River  doctrine  permits  a  federal  court  to  stay  an  action  pending
resolution  of  a  similar  state  action  based  on  judicial  economy

and federal-state comity.  Id. at 817-18.  When it applies, the doctrine provides a narrow exception to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them."  Id. at 817; see Caudill v. Eubanks Farms, Inc., 301 F.3d 658, 660 (6th Cir. 2002) ("Abstention is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.") (internal quotation marks and citation omitted).

When considering whether the Colorado River doctrine applies, courts first ask whether there are parallel proceedings in state court.  Bates v. Van Buren Twp., 122 F. App'x 803, 806 (6th Cir. 2008) (citing Crawley v. Hamilton Cnty. Comm'rs, 744 F.2d 28, 31 (6th Cir. 1984)); Romine v. Compuserve Corp., 160 F.3d 337, 340 (6th Cir. 1998) (referring to whether cases are parallel as a threshold question).  If there are parallel proceedings, courts consider the factors articulated in Colorado River, as modified by subsequent cases.  See Romine, 160 F.3d at 340-41 (collecting factors from Colorado River, 424 U.S. at 818-19, Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23-26 (1978), and Will v. Calvert Fire Ins. Co., 437 U.S. 655, 663-67 (1978)).  Courts balance those factors to determine whether abstention is proper based on the particular facts of the case before it.  Id. at 341.  (citations omitted).

**B. Analysis**

13

Federal and state court proceedings are parallel if they are "substantially similar." Bates, 122 F. App'x at 806; Romine, 160 F.3d at 340. Exact identity between the cases is not required. See Bates, 122 F. App'x at 806; Romine, 160 F.3d at 340 (citations omitted). As a general rule, however, "parallel proceedings involve the same plaintiff against the same defendant." Total Renal Care, Inc. v. Childers Oil Co., ___F. Supp. 2d.___, No. 10-33-ART, 2010 WL 3871908, at *4 (E.D. Ky. 2010) (citations omitted) (emphasis in original).

In the State Court Action, Plaintiffs Charles F. "Frank" Holland, Mary Lou Holland, William Bartholomew, Donald B. Tredway, and Martha D. "Betty" Tredway (the "Named State Plaintiffs") allege that they paid unlawful attorney's fees to the City when paying delinquent property taxes. (See Am. Class Action Compl. ¶¶ 10-18, ECF No. 17-1 ("State Compl.").) Although the class alleged in the State Court Action consists of persons who have paid attorney's fees to the City since 2001, while the purported class in this action consists of persons who received a notice from Linebarger and who have paid unlawful attorney's fees to Linebarger or the City since March 24, 2004, both classes are defined as individuals and entities who paid unlawful attorney's fees for collecting back taxes owed to the City. (Compare First Am. Compl. ¶¶ 11, 24-26, 28-33, with State Compl. ¶¶ 19-27.) In substance, the class in the State Court

14

Action would include all Class Members in this action, except those who paid back taxes and the accompanying attorney's fees without first receiving a notice from Linebarger. (See First Am. Compl. ¶ 28; State Compl. ¶ 20.)

Despite the overlap between the purported classes, the named plaintiffs and the defendants differ. Plaintiff is not a named plaintiff in the State Court Action. (Cf. State Compl. ¶¶ 4-6.) The City is the sole defendant in the State Court Action. (See State Compl. ¶ 7.) Linebarger is the sole defendant in this action. (See First Am. Compl. ¶¶ 4, 7.)

Although generally "parallel proceedings involve the same plaintiff against the same defendant," Total Renal Care, 2010 WL 3871908, at *4, the Sixth Circuit has also concluded that, where there is "congruence of both interests and allegations in . . . duplicative class actions, the nonidentity of the named representatives should in no way undermine a court's determination that the suits in question are otherwise parallel." Romine, 160 F.3d at 340. "If the rule were otherwise, the Colorado River doctrine could be entirely avoided by the simple expedient of naming additional parties." Id. (quoting Lumen Constr., Inc. v. Brant Constr. Co., Inc., 780 F.2d 691, 695 (7th Cir. 1985)).

Considering two securities class actions in Romine, the Sixth Circuit concluded that, although the underwriters of the

securities offering were defendants in the federal action only and not in the state action, and the named plaintiffs in the actions differed, the two actions were "substantially similar" and therefore parallel. See id. Romine stands for the proposition that, where there are "class actions in state and federal court involving coextensive plaintiff classes, advancing identical theories of recovery, and seeking the same relief," the two actions are parallel, even if there are different class representatives and defendants in each. See Total Renal Care, 2010 WL 3871908, at *4 (distinguishing Romine, 160 F.3d at 340). Under Romine, a plaintiff cannot distinguish his action "by adding different defendants and recasting his claims using additional legal theories." Bell v. Countrywide Home Loans, Inc., No. 5:08-cv-167-JHM, 2009 WL 260805, at *3 (W.D. Ky. Feb. 04, 2009) (citing Romine, 160 F.3d at 340).

Unlike the dueling class actions in Romine, there is no overlap between the defendants in the State Court Action and the defendants in the action before this Court. The City is the sole defendant in the State Court Action. (See State Compl. ¶ 7.) Linebarger is the sole defendant in this action. (See First Am. Compl. ¶¶ 4, 7.) Neither Romine nor any other Sixth Circuit authority stands for the proposition that, where there is no overlap between defendants in state and federal actions, the presence of different parties is irrelevant. Indeed, other

16

Sixth Circuit authority suggests that the identity of the parties is relevant. See Baskin v. Bath Twp. Bd. of Zoning Appeals, 15 F.3d 569, 572 (6th Cir. 1994) (explaining that because "the state and federal actions . . . [did] not possess the required identity of parties and issues," they were not parallel); Crawley, F.2d at 31 (noting that parties were different in concluding that actions were not parallel). Therefore, that Linebarger is the only defendant in this action and the City is the only defendant in the State Court Action suggests that the two proceedings are not parallel.

Two actions are not parallel merely because they arise out of the same basic facts. See Baskin, 15 F.3d at 572; Total Renal Care, 2010 WL 3871908, at *5. If a state court action and a federal action are truly parallel, resolution of the state court action will also resolve all issues in the federal action. See Baskin, 15 F.3d at 572 (explaining that "in deciding whether a state action is parallel for abstention purposes, the district court must compare the issues in the federal action to the issues actually raised in the state court action, not those that might have been raised"); Kopacz v. Hopkinsville Surface and Storm Water Utility, 714 F. Supp. 2d 682, 688 (W.D. Ky. 2010) ("Although the parties are nearly identical and the cases arise from largely the same facts, these cases are not parallel since there are claims that will not be decided by the state court.");

cf. Iron Workers of W. Penn. Pension Plan v. Caremark RX, Inc., No. 3:06-1097, 2007 WL 60927, at *3 (M.D. Tenn. Jan. 5, 2007) (explaining that, under Sixth Circuit precedent, "it is the claims and issues which must be parallel, and not the parties").

"If there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to the parallel litigation." Chellman-Shelton v. Glenn, 197 F. App'x 392, 394 (6th Cir. 2006) (quoting TruServ Corp. v. Flegles, Inc., 419 F.3d 584, 592 (7th Cir. 2005)). The question is not whether the state court action might be modified to make it substantially similar to the federal one, but whether the state court action "as it currently exists is a parallel, state-court proceeding." Crawley, 744 F.2d at 31 (emphasis in original). Although "one cannot merely advance a different legal theory to obtain a remedy and counter abstention," Kopacz, 714 F. Supp. 2d at 688, "when the state and federal cases present different theories of recovery, courts do not generally characterize the proceedings as parallel," Gentry v. Wayne Cnty., No. 10-cv-11714, 2010 WL 4822749, at *2 (E.D. Mich. Nov. 22, 2010) (internal quotation marks and citations omitted).

Although the claims of the Plaintiff and the Named State Plaintiffs center on the payment of allegedly illegal attorney's fees for collecting back taxes owed to the City, the theories of liability differ.  The Named State Plaintiffs allege claims for violation of the City charter and code and for unjust enrichment, requesting a declaratory judgment and damages.  (See State Compl. ¶¶ 28-39.)  Plaintiff alleges violation of the TCPA, unjust enrichment, negligence, and conversion, requesting a constructive trust, compensatory damages, and punitive damages.  (See First Am. Compl. ¶¶ 34-62.)

To resolve the claims against the City in the State Court Action, the Chancery Court must decide whether the attorney's fees the Named State Plaintiffs paid to the City exceeded the limits established by Tennessee law.  That decision will not resolve the issues and claims in the action before this Court. For example, in this action, Plaintiff brings a negligence claim against Linebarger.  (See First Am. Compl. ¶¶ 51-53.)  Because Linebarger is not a defendant in the State Court Action and the Named State Plaintiffs have not alleged a negligence theory, even if the Chancery Court were to conclude that the attorney's fees were unlawful, it would have no reason to decide whether Linebarger owed and breached any duty to Plaintiff and the Class Members.  The same would be true of the conversion and TCPA claims against Linebarger in this action.  (See First Am. Compl.

¶¶ 34-47, 56-57.)   Regardless of the Chancery Court's decision in the State Court Action, these issues will remain unresolved.

Because resolution of the State Court Action will not resolve the issues and claims in this action, the actions are not parallel.  See Baskin, 15 F.3d at 572; Kopacz, 714 F. Supp. 2d at 688.  On that basis alone, abstention under the Colorado River doctrine would be improper, and the Court must exercise jurisdiction.   See Chellman-Shelton, 196 F. App'x at 396; Baskin, 15 F.3d at 572; Total Renal Care, 2010 WL 3871908, at *5.   That the City is the sole defendant in the State Court Action and Linebarger is the sole defendant in this action further suggests that abstention would be improper.  See Baskin, 15 F.3d at 572 Crawley, F.2d at 31.  Linebarger's motion to stay is DENIED.

### IV.  Motion to Dismiss

Although Linebarger argues that Plaintiff's action should be dismissed for multiple reasons, the Court need only address three: the Tax Injunction Act, failure to join a party under Rule 19, and failure to state a claim.  (See Def.'s Mem. in Supp. of Mot. to Dismiss.)

### A. Tax Injunction Act

The Tax Injunction Act ("TIA") provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain,

speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

Linebarger argues that Plaintiff's action would impede the City's ability to collect taxes and that, because Tennessee has a plain, speedy, and efficient remedy to resolve disputes about state taxes, this Court lacks jurisidiction. (See Def.'s Mem. in Supp. of Mot. to Dismiss 4-12.) Plaintiff counters that the TIA is inapplicable because Linebarger is a private party, not a governmental entity; Plaintiff challenges Linebarger's attorney's fees, not the City's property taxes; and Plaintiff seeks damages, not injunctive relief. (See Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss 6-13, ECF No. 28.) ("Pl.'s Resp. to Def.'s Mot. to Dismiss")

Linebarger has not cited any authority for the proposition that the TIA insulates a private party from suit in federal court, and the limited authority available suggests the opposite. See Tomaiolo v. Transamerica Corp., 131 F. Supp. 2d 280, 295 (D.R.I. 2001). In Tomaiolo, plaintiffs brought suit under 42 U.S.C. § 1983 against a municipality, its agents, and a private bank, alleging that they had conspired to violate the plaintiffs' constitutional rights by requiring them to pay their property taxes as a lump sum rather than quarterly. See id. at 284. Although the district court concluded that the TIA removed jurisdiction over plaintiffs' claims against the municipality

and its agents, the court exercised jurisdiction over plaintiffs' claims against the bank, which had held the plaintiffs' payments in escrow. See id. at 286, 291, 295-99. The district court's distinction suggests that the TIA does not insulate private parties from suit. See id.

That the TIA does not remove jurisdiction for actions against private parties engaged in the tax collection process accords with Sixth Circuit precedent that the TIA "applies only when a claimant seeks to 'enjoin' or otherwise hinder 'the assessment, levy or collection' of a state tax." BellSouth Telecomms., Inc. v. Farris, 542 F.3d 499, 501 (6th Cir. 2008). The Supreme Court has construed the TIA to apply "only in cases . . . in which state taxpayers seek federal-court orders enabling them to avoid paying state taxes." Id. (explaining that the Supreme Court "has permitted lawsuits that do not seek to avoid paying taxes, and it has barred lawsuits that do") (citations and internal quotation marks omitted) (emphasis in original). The TIA does not "apply whenever a taxpayer seeks to enjoin a law that happens to be part of a tax bill" and "does not strip federal courts of jurisdiction over all claims that might, after this or that happens, have some negative impact on local revenues. Id. at 503-04 (concluding that the TIA did not prevent telecommunications providers from challenging a state law that barred them from stating on their customers' bills that

the customers' increased rates were due to an increase in state taxes on the providers).

Plaintiff's Complaint does not allege that he or the Class Members are not liable for paying property taxes to the City. Plaintiff alleges that he paid delinquent property taxes to the City to end a legal proceeding and that, in the course of paying those taxes, he also paid illegal attorney's fees that were transferred to Linebarger.  (See First Am. Compl. ¶¶ 18-23.) Nothing about Plaintiff's lawsuit "seeks relief from legal responsibility for the underlying tax, whether through an injunction or otherwise."  See BellSouth Telecomms, 542 F.3d at 504.  For that reason, the TIA does not bar Plaintiff's action.

### B. Required Joinder

Federal Rule of Civil Procedure 12(b)(7) permits dismissal for "failure to join a party under Rule 19."  See Fed. R. Civ. P. 12(b)(7).  Rule 19(a) provides that a person must be joined if doing so will not destroy subject matter jurisdiction and the person is a necessary party.  See Fed. R. Civ. P. 19(a).  A party is necessary if, in that person's absence, the court cannot accord complete relief among the parties or the person claims an interest in the action and, in that person's absence, she might be unable to protect her interest or might suffer inconsistent obligations.  Fed. R. Civ. P. 19(a)(1).  Where those conditions are met but joinder is not feasible because it

would destroy subject matter jurisdiction, Rule 19(b) requires a court to "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed" and states factors to aid in that determination. Id. 19(b).

When considering whether joinder is required under Rule 19, a court applies a three-step test. See Glancy v. Tabuman Ctrs., 373 F.3d 656, 666 (6th Cir. 2004). "First, the court must determine whether the person or entity is a necessary party under Rule 19(a)." Id. (citing Temple v. Synthes Corp., 498 U.S. 5, 8 (1990)). "Second, if the person or entity is a necessary party, the court must then decide if joinder of that person or entity will deprive the court of subject matter jurisdiction." Id. (citations omitted). Third, if joinder is not feasible because it would eliminate subject matter jurisdiction, "the court must analyze the Rule 19(b) factors to determine whether the court should 'in equity and good conscience' dismiss the case because the absentee is indispensable." Id. (citations omitted).

Because the City has not claimed an interest in the subject of this action, the only issue is whether the City is necessary for the Court to accord complete relief. See id. Because Linebarger collected the allegedly unlawful attorney's fees while performing collections work under a contract with the

24

City, Linebarger argues that the City is a necessary party because it is unclear what the City and Linebarger knew about the provisions of Tennessee law at issue in this case; if Linebarger is not at fault, the City may be; and the City may make claims on Linebarger for indemnification if the City is liable. (See Def.'s Mem. in Supp. of Mot. to Dismiss 12-16.)

Although these arguments suggest that the City and Linebarger might have claims against each other if either were found liable in this case or in the State Court Action, they do not show that the City is necessary for the Court to accord complete relief to Plaintiff. Plaintiff asserts claims for violation of the TCPA, unjust enrichment, negligence, and conversion. (See First Am. Compl. ¶¶ 34-53, 56-57.) Because those claims sound in tort, the City is no more than a potential joint tortfeasor. Because complete relief can be satisfied by either of two jointly and severally liable tortfeasors, joint tortfeasors are not necessary parties under Rule 19(a). See PaineWebber, Inc. v. Cohen, 276 F.3d 197, 204 (6th Cir. 2001) (explaining that "a person's status as a joint tortfeasor does not make that person a necessary party, much less an indispensable party") (citing Temple v. Synthes Corp., 498 U.S. 5, 7-8 (1990)). The Court can order complete relief against Linebarger without more than indirectly affecting the City's

interests.   Therefore, Linebarger's argument that the City is a necessary party is not well-taken.

### C. Failure to State a Claim

#### 1. Standard of Review

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007).   A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint."   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007).   This standard requires more than bare assertions of legal conclusions.   Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001).   "[A] formulaic recitation of the elements of a cause of action will not do."   Twombly, 550 U.S. at 555.   Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam).   "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"   Id. (citing Twombly, 550 U.S. at 555).   Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its

face'" to survive a motion to dismiss.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citation omitted).  A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Id. at 1950.

### 2. Analysis

In arguing that Plaintiff has failed to state a claim, Linebarger isolates particular paragraphs within the Complaint and argues that they are legal conclusions, not plausible, or otherwise insufficient under the standard established by Iqbal and Twombly.  (See, e.g., Def.'s Mem. in Supp. of Mot. to Dismiss 18-27.)  Standing alone, some of the paragraphs of Plaintiff's Complaint might be legal conclusions or implausible, but Iqbal and Twombly do not require courts to conduct a paragraph-by-paragraph review of a plaintiff's complaint.  Those cases simply require that a complaint contain well-pleaded facts sufficient to state a facially plausible claim for relief.  See Iqbal, 129 S. Ct. at 1949.  Rather than address Linebarger's

paragraph-by-paragraph arguments, the Court will consider Plaintiff's complaint in its entirety.

### i.   TCPA

"The Tennessee Consumer Protection Act prohibits '[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce,' and in particular, 'any . . . act or practice which is deceptive to the consumer or to any other person.'" Conner v. Hardee's Food Sys., Inc., 65 F. App'x 19, 25 (6th Cir. 2003) (citations omitted); see Tenn. Code Ann. § 47-18-104(b); Timoshchuk v. Long of Chattanooga Mercedes-Benz, No. E2008-01562-COA-R3-CV, 2009 WL 3230961, at *3 (Tenn. Ct. App. Apr. 15, 2009). Linebarger argues that Plaintiff has failed to state a claim for a violation of the TCPA because Tennessee courts have concluded that the TCPA does not apply to attorneys. (See Def.'s Reply to Pl.'s Resp. in Opp'n to Def.'s Mot. to Stay, ECF No. 19.)

When professionals like lawyers and doctors practice their professions outside their roles as businessmen or entrepreneurs, they do not engage in trade or commerce under the TCPA. See Schmidt v. Nat'l City Corp., No. 3:06-CV-209, 2008 WL 597687, at *3 (E.D. Tenn. Mar. 4, 2008) (concluding that "the TCPA does not apply to lawyers practicing law because the practice of law is a profession and is not trade or commerce as defined in the TCPA"); Constant v. Wyeth, 352 F. Supp. 2d 847, 853 (M.D. Tenn.

2003) (explaining that, "because the actual practice of medicine does not affect trade or commerce," medical malpractice claims may not be brought under the TCPA).  That said, the TCPA does not include a blanket exemption for professionals.  See Pagliara v. Johnson Barton Proctor & Rose, LLP, No. 3:10-cv-00679, 2010 WL 3940993, at *10 (M.D. Tenn. Oct. 6, 2010) (explaining that "professionals do not enjoy blanket immunity from TCPA claims") (citations omitted).  Allegations of unfair or deceptive acts or practices in the conduct of the entrepreneurial or business aspect of a professional's practice may be brought under the TCPA.  See Constant, 352 F. Supp. 2d at 853 n.10.

Plaintiff bases his TCPA claim on the Notice sent by Linebarger to Plaintiff, which stated that the Wright owed Linebarger's client, the City, $960.33 in back taxes and associated fees and penalties, an amount that Plaintiff alleges included an unlawful twenty-percent attorney's fee.  (See First Am Compl. ¶¶ 18-23, 40, 45.)  The issue is whether, in sending the Notice, Linebarger was practicing law.

In regulating attorney conduct, Tennessee has defined the "practice of law" by statute.  See Tenn. Code Ann. § 23-3-101(3).  That statute states:

> "Practice of law" means the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court, commissioner,

> referee or any body, board, committee or commission
> constituted by law or having authority to settle
> controversies, or the soliciting of clients directly
> or indirectly to provide such services.

Id. (emphasis added). Although there is limited authority in the TCPA context, one district court has concluded that, "[w]hen a lawyer negotiates and drafts a settlement agreement, the lawyer is undoubtedly practicing law." Pagliara, 2010 WL 3940993, at *11.

In essence, the Notice Linebarger sent to Plaintiff was a post-filing demand letter. In addition to stating the amount Wright owed the City, the Notice stated that the City had brought suit against Wright in Chancery Court to collect back taxes. (See First Am. Compl. ¶ 19.) The Notice also stated that, if the total amount due, $960.33, were not paid, Linebarger would ask the Chancery Court to enter default judgment in favor of the City. (See id. ¶¶ 19-20.) The Notice further stated, however, that, if the amount were paid in full, Linebarger "would cause the subject property to be 'removed from this lawsuit.'" (Id. ¶ 20.)

The facts alleged demonstrate that, when Linebarger sent the Notice, it was practicing law as defined in Tennessee. Because acts in connection with pending court proceedings constitute the practice of law, see Tenn. Code Ann. § 23-3-101(3), and the Notice informed Plaintiff of the claim against

Wright in Chancery Court, Linebarger sent the Notice "in connection with proceedings pending or prospective before any court." See Tenn. Code Ann. § 23-3-101(3).

Linebarger's Notice also included what amounts to a settlement offer. (See First Am. Compl. ¶ 20.) Because the negotiation of a settlement also constitutes the practice of law, the fact that the Notice stated that Linebarger would cause the Property to be "removed from this lawsuit" and a tax lien would be avoided further suggests that, in sending the Notice, Linebarger was practicing law. See Pagliara, 2010 WL 3940993, at *11.

In arguing that it has stated a TCPA claim against Linebarger, Plaintiff relies on Proctor v. Chattanooga Orthopaedic Group, P.C., 270 S.W.3d 56, 60 (Tenn. Ct. App. 2008). In that case, the Tennessee Court of Appeals concluded that a patient had stated a claim against a medical doctor who had allegedly performed one surgical procedure on the patient, but had billed the patient's insurer for a more expensive procedure. See id. at 58. The court concluded that the patient had stated a claim for deceptive business practices under the TCPA by alleging that the doctor had misled him to keep his business and had billed for a more expensive procedure than the one actually performed. See id. at 60. Those acts occurred in the business aspects of the doctor's practice. Id.

Unlike <u>Proctor</u>, Plaintiff does not allege that, in the context of an attorney-client relationship, Linebarger misleadingly convinced him to retain it as his attorney and eventually billed Plaintiff for legal work different from the legal work it performed. <u>Cf.</u> <u>id.</u> at 57-58, 60. Linebarger had no attorney-client relationship with Plaintiff, Wright, or the Estate and did not bill Plaintiff for legal work different from the work Linebarger performed. <u>Cf.</u> <u>id.</u> at 57-58, 60. Wright was the opposing party in an action brought by Linebarger's client, the City. When Linebarger sent the Notice, it informed Plaintiff of a pending action in Chancery Court and made a settlement offer. Therefore, when Linebarger sent the Notice, it was practicing law, not engaging in trade or commerce as defined by the TCPA. <u>See</u> Tenn. Code Ann. § 23-3-101(3); <u>Pagliara</u>, 2010 WL 3940993, at *10-11; <u>Schmidt</u>, 2008 WL 597687, at *3; <u>Constant</u>, 352 F. Supp. 2d at 853.

Even if Linebarger's sending the Notice to Plaintiff were not practicing law, that act would be better characterized as a debt collection than a business aspect of Linebarger's legal practice. The TCPA does not reach debt collection activity unless that activity stems from an underlying transaction that constitutes trade or commerce. Compare <u>Hunter v. Washington Mut. Bank</u>, No. 2:08-CV-069, 2008 WL 4206604, at *5-6 (E.D. Tenn. Sept. 10, 2008) (stating that the TCPA does not apply to debt

32

collection activities associated with a home foreclosure) <u>and</u> <u>Pursell v. First Am. Nat'l Bank</u>, 937 S.W.2d 838, 841-42 (Tenn. 1996) (concluding that repossession of collateral securing a loan does not affect "the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property" as required by the TCPA), <u>with</u> <u>Searle v. Harrah's Entertainment, Inc.</u>, No. M2009-02045-COA-R3-CV, 2010 WL 3928632, at *11 (Tenn. Ct. App. Oct. 6, 2010) (concluding that a casino's efforts to collect a debt "clearly involve[d] trade, commerce, and a consumer transaction" because the plaintiff had gone to the casino to gamble, which was the casino's trade, and the casino had provided him with cash in exchange for his $500 check so that he could engage in the casino's trade, gambling).

Linebarger's Notice related to a debt Wright owed to the City, her back taxes. (<u>See</u> First Am. Compl. ¶¶ 18-23.) That debt resulted from Wright's failure to pay property taxes she owed the City before she died. Linebarger's effort to collect that debt on behalf of the City did not affect "the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property." <u>See</u> <u>Pursell</u>, 937 S.W.2d at 841-42. Therefore, if considered debt collection activity, Linebarger's sending the Notice would not be covered by the TCPA. <u>See</u> <u>Hunter</u>, 2008 WL 4206604, at *5-6; <u>Pursell</u>, 937 S.W.2d at 841-42.

Whether Linebarger was practicing law or collecting a debt when it sent the Notice to Plaintiff, it was not engaged in trade or commerce, and the TCPA does not reach its activities. See Pagliara, 2010 WL 3940993, at *10-11; Schmidt, 2008 WL 597687, at *3; Hunter, 2008 WL 4206604, at *5-6; Constant, 352 F. Supp. 2d at 853; Pursell, 937 S.W.2d at 841-42. Because the TCPA does not apply to Linebarger's conduct, Plaintiff has failed to state a claim for violation for the TCPA. See Pagliara, 2010 WL 3940993, at *11; Hunter, 2008 WL 4206604, at *6. Therefore, Plaintiff's claim for violation of the TCPA is DISMISSED.[3]

### ii. Unjust Enrichment

Under Tennessee law, plaintiffs must prove three elements to recover for unjust enrichment: (1) "[a] benefit conferred upon the defendant by the plaintiff," (2) "appreciation by the defendant of such benefit," and (3) "acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 525 (Tenn. 2005) (quoting Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 155 (Tenn. 1966)). Linebarger argues that Plaintiff has failed to state a claim for unjust enrichment because Plaintiff

---

[3] Because the Court concludes that Plaintiff has not stated a claim for relief under the TCPA, it need not consider whether a TCPA claim may be brought collectively as a class action in federal court.

has not alleged factual support for each element. (See Mem. of Law in Supp. of Mot. to Dismiss 25-26.)

Plaintiff's claim for unjust enrichment incorporates the factual allegations asserted elsewhere in his Complaint. (See First Am. Compl. ¶ 48.) Plaintiff alleges that, on behalf of the Estate, he paid the $960.33 requested in the Notice to have the Property removed from the lawsuit Linebarger had filed on behalf of the City in Chancery Court. (See id. ¶ 23.) Plaintiff further alleges that the City remitted to Linebarger the entire twenty-percent attorney's fee included in that amount. (See id. ¶¶ 23, 25.) Therefore, there is no real question that Plaintiff conferred a benefit on Linebarger that Linebarger appreciated. See Freeman Indus., 172 S.W.3d at 525 ("A benefit is any form of advantage that has a measurable value including the advantage of being saved from an expense or loss.") (citations omitted). At issue is the third element—the key to an unjust enrichment claim. See id. ("The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust.") (citations omitted).

Tennessee law bars an attorney collecting unpaid property taxes on behalf of a governmental entity from receiving compensation greater than ten percent of all delinquent land taxes collected. See Tenn. Code Ann. § 67-5-2404. Tennessee law also provides that the ten percent penalty imposed on back

taxes "shall be computed on the base amount of delinquent taxes, not including accrued interest or penalties." See id. § 67-5-2410(b)(1). If, in the course of collecting back taxes for the City, Linebarger charged an attorney's fee greater than ten percent, that fee is plausibly unlawful under the statutes. Therefore, if Linebarger accepted an unlawfully high attorney's fee, it plausibly accepted those funds "under such circumstances that it would be inequitable for [it] to retain" them. See Freeman Indus., 172 S.W.3d at 525. Plaintiff has alleged facts showing a plausible claim for unjust enrichment, and Linebarger's motion to dismiss that claim is not well-taken and is DENIED.

### iii. Negligence

To establish a claim for negligence under Tennessee law, a plaintiff must show "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause." Bradshaw v. Daniel, 854 S.W.2d 865, 869 (Tenn. 1993) (citing McClenahan v. Cooley, 806 S.W.2d 767, 774 (Tenn. 1991) and Lindsey v. Miami Dev. Corp., 689 S.W.2d 856, 858 (Tenn. 1985)). Linebarger argues that, because it had no duty to Plaintiff, Plaintiff's negligence claim must fail. (See Def.'s Mem. of Law in Supp. of Mot. to Dismiss 26-27.)

Plaintiff alleges that Linebarger had a duty to Plaintiff "to ensure that the amounts that it sought to collect [for the City] were at all times correct and lawful." (See First Am. Compl. ¶ 52.)   According to Plaintiff, that duty "included notifying Plaintiff and the Class Members of and collecting only those attorney['s] fee[s] which were permitted by law." (See id.)   Plaintiff alleges that Linebarger breached its duty and therefore caused Plaintiff and others similarly situated to pay delinquent taxes and fees they did not owe. (See id.)

Linebarger sent the Notice to Plaintiff in the course of its representation of the City in a suit the City had brought for back taxes. (See First Am. Compl. ¶¶ 18-23.)   Therefore, the gravamen of Plaintiff's claim is that, under Tennessee law, although Linebarger represented the adverse party in a suit against Plaintiff's decedent, Linebarger had a duty to inform Plaintiff correctly of the total amount of back taxes Wright owed, the attorney's fees authorized by law, and the total amount due to settle the matter and release the Property from any possible tax lien.   Plaintiff's brief cites no authority for that duty and, in fact, makes no argument in favor of imposing that duty.

Whether "a defendant owed or assumed a duty of care to a plaintiff is a question of law." Downs ex rel. Downs v. Bush, 263 S.W.3d 812, 819 (Tenn. 2008) (citing West v. E. Tenn.

Pioneer Oil Co., 172 S.W.3d 545, 550 (Tenn. 2005); Stewart v. State, 33 S.W.3d 785, 793 (Tenn. 2000)). To determine whether a defendant has a duty in a particular case, courts apply a balancing test. Id. at 479. A defendant has "a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." Id. (quoting McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995)). In making that determination, courts consider

> the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

McCall, 913 S.W.2d at 153 (citing Restatement (Second) of Torts §§ 292-93 (1964)).

As a general rule, "an attorney is not liable for negligence to third parties who are not clients and are not in privity of contract with the attorney." Stinson v. Brand, 738 S.W.2d 186, 190 (Tenn. 1987) (citations omitted). However, "an attorney may be liable to a third person, even an adverse party in litigation, for malicious prosecution and abuse of process." Id. (citing Peerman v. Sidicane, 605 S.W.2d 242, 245 (Tenn. Ct. App. 1980)). An attorney may also have duties to non-clients

38

when engaged in business transactions. See id. (citing Restatement (Second) of Torts 2d § 552 (1977)); see also Cont'l Land Co., Inc. v. Inv. Props. Co., No. M1998-00431-COA-R3-CV, 1999 WL 1129025, at *7 (Tenn. Ct. App. Dec. 10, 1999).

Tennessee courts have concluded that, in the context of business transactions, "an attorney's duty to use due care in supplying information may extend to third parties with whom the attorney is not in privity." See Robinson v. Omer, No. 01A01-9510-CV-00434, 1996 WL 274406, at *3 (Tenn. Ct. App. May 24, 1996) (citing Collins v. Binkley, 750 S.W.2d 737, 739 (Tenn. 1988) and Stinson, 738 S.W.2d at 191). When an attorney negligently prepares deeds in a real estate transaction, knowing that third parties will rely on those deeds, he may be liable to the third parties. See Collins, 750 S.W.2d at 739 (concluding that an attorney had a duty to non-clients purchasing real estate to prepare a warranty deed that would be valid for purposes of notice registration); Stinson, 738 S.W.2d at 191 (concluding that attorneys could be held liable to non-clients for negligence in preparing two deeds and a deed of trust in a real estate transaction). An attorney may also be liable when, in the course of advising his client in a transaction, the attorney knows that his advice will be used and relied on by a third party transacting with the client. See Robinson, 1996 WL 274406, at *3 (concluding that an attorney who had advised his

39

client that secretly videotaping the client's sexual encounters was "legally permissible" had a duty of care to the client's cameraman because the attorney knew that some third party would film the client's encounters).

Although the Tennessee Rules of Professional Conduct do not define the standard of care in actions for professional negligence, they are persuasive in determining a lawyer's duties to non-clients in the context of litigation.  See Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C., 813 S.W.2d 400, 405 (Tenn. 1991) (noting that the Rules may provide guidance in determining lawyers' obligations).  Under the Rules, an attorney has some duties to persons other than his client.  For example, in the course of representing a client, "a lawyer shall not knowingly make a false statement of material fact or law to a third person."  Id. 4.1(a).  When dealing with an unrepresented person, a lawyer "shall not state or imply that the lawyer is disinterested."  Id. 4.3.

In contrast to the expansive, fiduciary duties that an attorney owes to his client and that comprise the bulk of the Rules, an attorney's duties to others are limited.  Because a lawyer has a duty to avoid entering into situations that might give rise to a conflict of interest, that limitation is necessary.  See id. 1.7. 1.8.  If an attorney's duties to others were broadly defined, they would lead to conflicts and place an

40

attorney in danger of violating his fiduciary duty to his client.

There is no authority for the proposition that, in the context of litigation, Tennessee law imposes a duty of care on attorneys supplying information to non-clients. The limited nature of an attorney's ethical duties to non-clients persuades the Court that, in litigation, the social value of an attorney's zealous representation of his client's interests outweighs any factor that might favor imposing a tort duty requiring an attorney to act with due care when providing information to a party adverse to his client. See McCall, 913 S.W.2d at 153. Therefore, when Linebarger provided information to Plaintiff, it did not have a duty to act with reasonable care, and Plaintiff cannot establish the first element of a negligence claim. See Bradshaw, 854 S.W.2d at 869. For that reason, Plaintiff's negligence claim is DISMISSED.

### iv. Conversion

Under Tennessee law, conversion is the appropriation of another's property to one's own use or benefit, in exclusion or defiance of the owner's rights. See Ralston v. Hobbs, 306 S.W.3d 213, 221 (Tenn. Ct. App. 2009) (citations omitted); see also Permobil v. Am. Express Travel Related Servs. Co., Inc., 571 F. Supp. 2d 825, 840 (M.D. Tenn. 2008) (citing Barger v. Webb, 391 S.W.2d 664, 665 (Tenn. 1965)). "Conversion is an intentional

tort, and a party seeking to make out a prima facie case of conversion must prove (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights." Thompson v. Thompson, No. W2008-00489-COA-R3-CV, 2009 WL 637289, at *14 (Tenn. Ct. App. Mar. 12, 2009) (citation omitted); see also Kinnard v. Shoney's, Inc., 100 F. Supp. 2d 781, 797 (M.D. Tenn. 2000).

Linebarger argues that Plaintiff has asserted that it exercised dominion over Plaintiff's property without offering facts to describe that "improper dominion." (See Mem. of Law in Supp. of Mot. to Dismiss 25.) Linebarger also argues that any attorney's fees it accepted were governed by its contract with the City and, therefore, Plaintiff cannot bring claims sounding in tort challenging the collection of those funds. (See id.)

In his conversion claim, Plaintiff incorporates the factual allegations alleged elsewhere in the Complaint. (See First Am. Compl. ¶ 56.) Plaintiff alleges that Linebarger was the ultimate recipient of the allegedly unlawful attorney's fee he paid to the City. (See id. ¶¶ 23, 25.) That fact alone demonstrates that Linebarger appropriated and exercised dominion over Plaintiff's funds. The issue is whether Linebarger took Plaintiff's funds in defiance of his rights.

Tennessee law bars an attorney collecting unpaid property taxes on behalf of a governmental entity from receiving compensation greater than ten percent of all delinquent land taxes collected.  See Tenn. Code Ann. § 67-5-2404.  Tennessee law also provides that the ten percent penalty imposed on back taxes "shall be computed on the base amount of delinquent taxes, not including accrued interest or penalties."  See id. § 67-5-2410(b)(1).  If, in the course of collecting back taxes for the City, Linebarger charged an attorney's fee greater than ten percent, that fee is plausibly unlawful under the statutes.  Therefore, if Linebarger sought and accepted an unlawfully high attorney's fee, it plausibly exercised dominion over that fee in violation of Plaintiff's true rights.  See Ralston, 306 S.W.3d at 221.  Plaintiff has alleged facts showing a plausible claim for conversion, and Linebarger's motion to dismiss that claim is not well-taken and is DENIED.

### v.   Other Counts

Plaintiff asserts two additional counts in his Complaint: for constructive trust and for punitive damages.  (See First Am. Compl. ¶¶ 54-55, 58-62.)  A constructive trust and punitive damages are remedies that might be imposed if Linebarger were found liable to Plaintiff.  See, e.g., Memphis Light, Gas & Water Div. v. Starkey, 244 S.W.3d 344, 355 (Tenn. Ct. App. 2007) (describing punitive damages as an award intended to punish the

wrongdoer and deter wrongful conduct); Story v. Lanier, 166 S.W.3d 167, 184 (Tenn. Ct. App. 2004) (describing the constructive trust as an "equitable device[] used by courts to avoid unjust enrichment"). Linebarger has moved to dismiss these counts as if they were independent causes of action. (See Mem. in Supp. of Mot. to Dismiss 26-27.)

Plaintiff has stated claims for unjust enrichment and conversion against Linebarger. See supra at IV.C.ii, IV.C.iv. Because a constructive trust or punitive damages might be appropriate if Linebarger were liable on either of those claims, its argument to dismiss the remedies is not well-taken.

## V. Linebarger's Motion to Dismiss for Lack of Standing & Movants' Motion for Leave to Substitute

Linebarger has filed a separate motion to dismiss arguing that Plaintiff lacks standing to bring the claims asserted in the Complaint. (See Mot. to Dismiss for Lack of Standing; Mem. of Law in Supp. of Mot. to Dismiss for Lack of Standing, ECF No. 15-1 ("Def.'s Standing Mem.").) In response, Plaintiff first argues that Linebarger's motion to dismiss is procedurally defective. (See Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss for Lack of Standing, ECF No. 29 ("Pl.'s Resp. to Standing").) Plaintiff relies on Federal Rule of Civil Procedure 12, which provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or

objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Because Linebarger's earlier motion to dismiss did not raise standing, Plaintiff argues that Linebarger has waived that defense. (See Pl.'s Resp. to Standing 3-4.)

Although called a motion to dismiss for lack of standing, the essence of Linebarger's argument is that Plaintiff is not the real party in interest, not that Plaintiff lacks standing under Article III of the Constitution. See Zurich Ins. Co. v. Logitrans, Inc., 297 F.3d 528, 532 (6th Cir. 2002) (explaining that the real party in interest concept is related to but different from the concept of standing) (citations omitted); Firestone v. Galbreath, 976 F.2d 279, 283 (6th Cir. 1992) ("Frequently, attorneys and courts confuse the concepts of standing with that of capacity to sue and with the real party in interest principle.") (citations omitted). The purpose of the real-party-in-interest principle is to "to identify the person who possesses the right sought to be enforced." See Firestone, 976 F.2d at 283 (citation omitted); Certain Interested Underwriters v. Layne, 26 F.3d 39, 42-43 (6th Cir. 1994) ("The real party in interest is the person who is entitled to enforce the right asserted under the governing substantive law.") (citations omitted). By contrast, the purpose of standing is to determine "whether the plaintiff can show an injury in fact

traceable to the conduct of the defendant." Id. (citation omitted).

The premise of Linebarger's motion is that the Estate never had an interest in the Property because, under Tennessee law, it passed by operation of law to Wright's heirs at the time of her death. (See Def.'s Standing Mem. 2-3.) That argument speaks to the real-party-in-interest principle, not Article III standing. See Firestone, 976 F.2d at 283.

"The federal rules do not contain a specific procedure for raising an objection that plaintiff is not the real party in interest. Nor do they indicate when the challenge should be made." 6A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1554 (3d ed. 2010); see Signal Int'l LLC v. Miss. Dep't of Transp., 579 F.3d 478, 487-88 (5th Cir. 2009) (explaining that a defendant must raise a real-party-in-interest defense "in time to allow the opportunity for joinder of the ostensible real party in interest" and that "the defense may be waived if the defendant does not timely object") (citations omitted). Although parties frequently raise real-party-in-interest objections in motions to dismiss under Rule 12(b), there is no requirement that they do so. See 5C Wright & Miller, Federal Practice & Procedure § 1554 (citations omitted). A defendant's objection is timely as long as substitution or joinder of the real party in interest remains "practical and

46

convenient." See Signal Int'l LLC, 579 F.3d at 488 (citations omitted).

Linebarger could have raised the real-party-in-interest issue in its initial motion to dismiss. See 5C Wright & Miller, Federal Practice & Procedure § 1554 (citations omitted). Because Linebarger filed its motion to dismiss for lack of standing just ten days after its initial motion to dismiss, substitution or joinder remains "practical and convenient." See Signal Int'l LLC, 579 F.3d at 488; (Mot. to Dismiss; Mot. to Dismiss for Lack of Standing). Therefore, Plaintiff's argument that the issue has been waived by operation of Rule 12(g) is not well-taken.

In his response, Plaintiff essentially admits that he is not the real party in interest but argues that, rather than dismiss the action, the Court should grant the motion to substitute filed concurrently. (See Pl.'s Resp. to Standing 5; Mot. for Leave to Substitute as Party Pls., ECF No. 30 ("Mot. to Substitute"); Movants' Mem. in Supp. of their Mot. for Leave to Substitute as Party Pls., ECF No. 30-1 ("Movants' Mem.") Linebarger has responded in opposition to the motion to substitute. (See Def.'s Resp. to Movant's [sic] Mot. for Leave to Substitute as Party Pls., ECF No. 30; Mem. of Law in Supp. of Def.'s Response to Movant's [sic] Mot. for Leave to Substitute

47

as Party Pls., ECF No. 31-1 ("Def.'s Resp. to Mot. to Substitute").)

Under Federal Rule of Civil Procedure 17, a "court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." See Fed. R. Civ. P. 17(a)(3). "After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." Id. "In deciding whether to allow a real party in interest to substitute into an action for the named plaintiff, the Court considers whether there has been an honest mistake as opposed to tactical maneuvering, unreasonable delay, or undue prejudice to the non-moving party." Tool-Plas Systems, Inc. v. Camaco, LLC, No. 09-12003, 2010 WL 1347686, at *2 (E.D. Mich. Mar. 31, 2010) (citing Esposito v. United States, 368 F.3d 1271, 1275-76 (10th Cir. 2004); Jordan v. Fox, Rothschild, O'Brien, & Frankel, 20 F.3d 1250, 1278 (3d Cir. 1994)). "A Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants." Zurich, 297 F.3d at 534 (Gilman, J., concurring) (quoting Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 20 (2d Cir. 1997)); see Kazee v.

48

Rosenberg, No. 10-55-ART, 2011 WL 720822, at *3 (E.D. Ky. Feb. 22, 2011) (noting Rule 17(a)'s "liberal policy of allowing opportunities for substitution").

Movants argue that, because the Property on which back taxes were paid was still listed in Wright's name at the time of filing, they made an honest mistake by allowing Plaintiff to file the action as administrator of the Estate. (See Movants' Mem 5.) According to Movants, "other than the name of the Plaintiffs in this action, the allegations contained in the First Amended Complaint will remain the same." (See id.) In response, Linebarger argues that Plaintiff's mistake falls "outside the scope of 'understandable' mistakes which courts will allow to be rectified through a lenient application of Rule 17(a)." (See Def.'s Resp. to Mot. to Substitute 11.)

Nothing suggests that Plaintiff's initially filing as administrator of the Estate was mere "tactical maneuvering." See Tool-Plas Systems, 2010 WL 1347686, at *2. This is not a case in which an action was filed on behalf of a plaintiff simply to toll the statute of limitations without any knowledge of whether the plaintiff was actually a real party in interest. Cf. Fed. R. Civ. P. 17 Notes of Advisory Committee on 1966 amendments (describing an example in which, following a plane crash, an attorney files an action in the name of a fictitious person named as personal representative of another fictitious

person, hoping that he might later substitute a real personal representative of a real victim).  Rather, the mistake appears to have resulted from a misunderstanding about whether Plaintiff was permitted to sue as administrator of the Estate, as Rule 17(a) generally permits.  See Fed. R. 17(a)(1) (providing that an administrator may sue in his own name without joining those for whose benefit the action is brought).  Nothing suggests that filing the action in Plaintiff's name rather than Movants' names was anything other than an understandable mistake, and Linebarger's argument to the contrary is not well-taken.

Nor is there any showing of "unreasonable delay" or "undue prejudice" to Linebarger.  See id.  Linebarger filed its motion to dismiss for lack of standing on May 24, 2010.  (See Mot. to Dismiss for Lack of Standing.)  On June 30, 2010, Movants filed the motion to substitute themselves as party plaintiffs under Rule 17.  (See Mot. to Substitute.)  Movants have asserted that the essential factual allegations in the Complaint will remain unchanged.  See Zurich, 297 F.3d at 534; (Movants' Mem. 5).  Therefore, substitution is proper.

Linebarger makes several additional arguments in opposition to Movants' motion to substitute.  (See Def.'s Resp. to Mot. to Substitute.)  Linebarger argues that, even if they were to substitute for Plaintiff, Movants would lack standing because they would not be Class Members as defined in the Complaint.

(See id. at 4-7.)   The gravamen of that argument is that none of the Movants was an individual "to whom Defendant sent or caused to be sent a Notice," as required for membership in the class defined by the Complaint.   (See id. at 6; see also First Am. Comp. ¶ 28.)   The argument about whether Movants are Class Members as defined in the Complaint speaks to the issue of representativeness for class certification, not whether they may assert the claims Plaintiff originally brought.   Therefore, the argument that the Movants cannot be substituted because they would not be members of the class alleged in the Complaint is not well-taken.

Linebarger next argues that the Movants lack Article III standing and, therefore, that they should not be permitted to substitute.   (See Def.'s Resp. to Mot. to Substitute 7-9. 11-13.)   Article III requires only that a plaintiff "demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent, that the injury is traceable to the defendant, and that it is likely that a favorable decision will redress that injury."   Massachusetts v. Envtl. Prot. Agency, 549 U.S. 497, 517 (2007) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)); Zurich, 297 F.3d at 231 (citations omitted).   Linebarger appears to argue that the Movants, if substituted, would not be able to show that they suffered an injury fairly traceable to Linebarger's alleged

receipt of unlawful attorney's fees in collecting back taxes for the City. (See id. at 8-9.)

The Complaint alleges that Plaintiff received a Notice stating that back taxes were due on the Property previously owned by Wright (see First Am. Compl. ¶ 18); that, if Plaintiff paid a certain amount, the Property would be released from a pending suit in Chancery Court (see id. ¶ 20); that the amount stated included an unlawful attorney's fee (see id. ¶¶ 21-22); and that, on behalf of "decedent Lenora Wright and her heirs," Plaintiff paid the total amount stated in the Notice, including the unlawful attorney's fee (see id. ¶ 23). Those allegations show that Plaintiff suffered an injury fairly traceable to Linebarger—specifically, the payment of an unlawful attorney's fee to avoid a possible tax lien on the Property and discharge a pending suit in Chancery Court. (See id. ¶¶ 18-23.) Based on those allegations, if the Movants were substituted for Plaintiff, the factual allegations in the Complaint would show that they too had suffered an injury fairly traceable to Linebarger. Although Linebarger argues that the Movants merely volunteered to pay the back taxes on the Property, the allegations demonstrate that they were required to pay those taxes immediately if they wanted to enjoy the Property they had inherited as Wright's heirs. (See id. ¶ 20.) If, as they allege, the Movants paid Linebarger an unlawful attorney's fee

when paying back taxes, they have suffered an injury fairly traceable to Linebarger.   Therefore, Linebarger's argument that the Movants lack Article III standing is not well-taken.

Linebarger has challenged Plaintiff's status as a real party in interest, and Movants have properly responded within a reasonable time by filing a motion to substitute themselves for Plaintiff, as required by Rule 17.   Linebarger's motion to dismiss for lack of standing is DENIED, and Movants' motion to substitute is GRANTED.

### VI.   Conclusion

Because this Court has jurisdiction, Linebarger's supplemental motion to dismiss for lack of jurisdiction is DENIED.   Because the State Court Action is not parallel, Linebarger's motion to stay is DENIED.   Because the Complaint states claims for conversion and unjust enrichment, but not for violation of the TCPA or negligence, Linebarger's motion to dismiss is GRANTED on the TCPA and negligence claims and DENIED on the conversion and unjust enrichment claims.   Although Plaintiff is not a real party in interest, Movants have properly moved to substitute.   Therefore, Linebarger's motion to dismiss for lack of standing is DENIED, and Movants' motion for leave to substitute is GRANTED.

So ordered this 22d day of March, 2011.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE